# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **UNDREA CARNELLE SCOTT** | **CIVIL ACTION NO. 05-1834** |
| **VS.** | **SECTION P** |
| **DETENTION CENTER, UNION PARISH** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on October 18, 2005, by *pro se* plaintiff Undrea Carnelle Scott. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC). He is incarcerated at the Union Parish Detention Center (UPDC), Farmerville, Louisiana and complains that he has been denied appropriate medical care at that institution.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the reasons that follow, it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** in accordance with the provisions of 28 U.S.C. §1915(e)(2)(B)(i) and(ii) and 28 U.S.C. §1915A(b)(1) because the action is frivolous and fails to state a claim for which relief may be granted.

## STATEMENT OF THE CASE

1

From early on, plaintiff has suffered from a condition known as "droopy" eye lids.[1] On some unspecified date prior to August, 1993, surgery to correct this defect was performed. Bands were inserted in the eyelids and the condition improved.

On March 11, 2004, plaintiff was an LDOC inmate residing in M-Dorm at the UPDC. On that date, plaintiff and his fellow inmates were escorted outside while their dormitory shower was painted with "E-Poxy" and "Mo-Poxy" paint. Within two hours, plaintiff and others were brought back into the dorm. Upon reentry into the building, plaintiff could smell strong fumes from the paint. Plaintiff developed a headache and his eyes started "bothering" him.

A couple of days later, plaintiff's "...eyes and head started bothering..." him again. On March 14 and 17, 2004, plaintiff submitted emergency sick call requests.

On March 18, 2004, plaintiff and his companions were again escorted from their dorm while workmen completed the painting project. Plaintiff again noted fumes upon reentry into the dormitory.

On March 23, 2004, plaintiff's sick call request was heeded and he was examined and treated by the staff nurse who gave plaintiff pain relievers and allergy medication. Plaintiff claims that this treatment was ineffective.

On April 1, 2004, and again on April 4, 2004, plaintiff submitted sick call requests. On April 5, 2004, he was again examined by the nurse who promised to set up an appointment with a

---

[1] "Drooping eyelid" or Ptosis is caused by weakness of the muscle responsible for raising the eyelid, damage to the nerves which control those muscles, or laxity of the skin of the upper eyelids. See Medline Plus, a Service of the United States National Library of Medicine and the National Institutes of Health http://www.nlm.nih.gov/medlineplus/ency/article/001018.htm

physician. Plaintiff submitted yet another sick call request on April 12, 2004.

On April 21, 2004, plaintiff's right eye became swollen. On April 29th, he submitted another sick call request. He was finally examined by the nurse on May 10, 2004.

On June 7, 2004, plaintiff was transported to the L.S.U. Medical Center in Monroe, but he was advised that his appointment was for another day. On August 10, 2004, he submitted another sick call.

On October 22, 2004, plaintiff's right eye again began to swell. On October 24 his left eye began to swell.

On December 9, 2004, plaintiff was examined by Dr. Redmonds at the L.S.U. Medical Center. Dr. Redmonds advised plaintiff to return if the drooping continued.

On December 15, 2004, plaintiff submitted another sick call. On December 17 he was examined by the nurse who advised plaintiff that she would arrange for him to be treated at the eye clinic in Shreveport.

On January 10, 2005, plaintiff submitted another sick call. On January 11, 2005, he was examined by the nurse who provided pain relievers.

On February 1, 2005, plaintiff filed a *pro se* civil rights suit and named UPDC as his sole defendant. He complained therein that the "Mo-Poxy" fumes caused various health problems which were not being adequately addressed by the UPDC. In the complaint, plaintiff admitted the existence of an Administrative Remedies Procedure at UPDC; however, he also admitted that he did not file an ARP based on the facts which formed the basis of his federal complaint. Plaintiff claimed to be "unaware" that he "had to file an ARP with this facility regarding [his] situation." See *Undrea Carnelle Scott v. Union Parish Detention Center*, No. 3:05-cv-0237, at

doc. 1-1, ¶II.

On March 14, 2005, plaintiff became dizzy and fainted while standing in line for breakfast. He was examined by the nurse and then taken to the Union Parish Hospital where he was examined again.

Plaintiff again experienced swelling in his left eye on March 18, 2005. On April 12, 2005, both of his eyes began to swell.

Plaintiff then experienced swelling in one or both eyes on April 21, 25, and 28 and May 2, 3, 5, 11, 12, 16, 25, 26, 30 and 31. He was seen by the nurse on May 27 and she advised him that the eye clinic had rescheduled his examination. Plaintiff had further problems on June 16, 21, and 30 and July 2, 8, 9 11, 20, 22, and 26. He experienced swelling on August 5, 9, 10, 14, 17, 18, 24, and 29. He was examined by the nurse following a sick call request in late August.

On June 30, 2005, Magistrate Judge James D. Kirk authored an Report recommending dismissal of plaintiff's civil rights complaint due to plaintiff's admitted failure to exhaust administrative remedies. [*Undrea Carnelle Scott v. Union Parish Detention Center*, No. 3:05-cv-0237 at doc. 6] On July 20, 2005, plaintiff filed an objection to the Report and Recommendation. He included a copy of a Request for Administrative Remedy dated July 11, 2005. In his objection plaintiff alleged that the UPDC Warden did not answer his July 11 grievance. [*id*., doc. 7, pp. 1-3] On August 22, 2005, plaintiff's Judge James dismissed plaintiff's complaint based upon his failure to exhaust administrative remedies. In the judgment, the court advised plaintiff that he might "... re-file this lawsuit once all administrative remedies are exhausted." [*id*., doc. 8]

Plaintiff continued to experience swelling on September 3, 8, 9, 13, 18, 23, and 30; and on October 4, 2005.

4

Plaintiff claims to have submitted an Administrative Remedies Procedure Grievance on August 26, 2005. He claims to have submitted this grievance to Major Brazzel. When no response was forthcoming after fifteen days, plaintiff notified prison authorities of his intention to appeal the tacit denial of his grievance to the Warden. Plaintiff claims to have submitted a second step grievance to Warden Sumlin on September 20, 2005; he claimed that by October 12, 2005, more than 15 days had elapsed since he sent the ARP to the Warden and he still had not received a response. [Doc. 1-1, p. 6] He filed the instant complaint on October 18, 2005. Attached to the complaint were documents alleged to be administrative remedy procedure grievances filed in August and September, 2005. Plaintiff claimed to have sent a first step grievance to major Brazzel on August 26, 2005. When he did not receive a timely response, plaintiff claimed to have sent a grievance to Warden Sumlin on September 20, 2005. [doc. 1-1, pp. 6-15]

On February 7, 2006, plaintiff filed an Amended Complaint and named UPDC Nurses Ms. Moon, Ms. Silmon, Ms. Osborne, and Warden Johnny Sumlin along with LDOC Secretary Richard Stalder as defendants. He prayed for compensatory damages totaling $5.5 million resulting from the "deliberate indifference" and "gross negligence" of the defendants and punitive damages in a like amount. [Doc. 4-1]

On February 17, 2006, the undersigned completed an initial review of the complaint and amended complaint. Plaintiff was ordered to amend his complaint to provide additional information. [doc. 7] On February 28, 2006 plaintiff filed his amended complaint. In this final amended complaint, plaintiff named seven defendants: (1) LDOC Secretary Richard Stalder, (2) Union Parish Sheriff Bob Buckley, (3) UPDC Warden Johnny Sumlin, (4) UPDC Major

Brazzel, and, (5) UPDC Nurses Moon, (6) Silmon, and, (7) Osborne. [doc. 8]

## **LAW AND ANALYSIS**

1. Frivolity Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A.*

*(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original complaint and amended complaints provide the specifics of his theories of liability with respect to each named defendant. Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted.

## 2. Supervisory Defendants

Secretary Stalder, Sheriff Buckley, and Warden Sumlin have been named in their respective supervisory capacities.[2] "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim.*

---

[2] Plaintiff alleged that with respect to Secretary Stalder, "[H]e is the overseer of all inmates ...the liability on the part of the supervisory secretary ... failed to promptly provide inmates with needed medical care..." [doc. 8, pp. 4-5] He alleged that Sheriff Buckley "is over the operations [and] he's the caretaker ..." [id., p. 5] He alleged that Warden Sumlin is "...head of administration here and refused to take appropriate steps to resolve the ... conditions... He failed to provide adequate supervision..."

*Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). Plaintiff has not alleged personal involvement on the part of these defendants and therefore his claims against them must be dismissed for failing to state a claim for which relief may be granted.

### 3. Limitations

The district court is authorized to dismiss a claim as frivolous "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period *sua sponte*. See *Harris v. Hegmann,* 198 F.3d 153 (5th Cir. 1999).

The Supreme Court has held that the statute of limitations for a §1983 action is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984).

However, the date of accrual for a §1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516, quoting *Vigman v. Community National Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981). A plaintiff need not realize that a legal cause of action exists but only that the facts support a claim. See,

8

*Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

Plaintiff's claims could be said to have accrued on several possible dates. His claim against Nurse Moon accrued during the period from March 14, 2004, through May 10, 2004.

The Fifth Circuit has approved application of Louisiana's one-year personal injury statute of limitations provided by La. Civ.Code Ann. art 3492 in a §1983 action. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980).

If plaintiff's claims against Nurse Moon accrued by May 2004, then he had one year, or until May 2005 to file suit. Plaintiff did not file this suit until October 2005. He cannot rely on his first suit to interrupt prescription because in that suit he did not join Nurse Moon as a defendant and alleged no facts to suggest that she was at fault. [See *Scott v. U.P.D.C.*, No. 3:05-cv-0237 at doc. 1]

Therefore, plaintiff's claims against Nurse Moon have prescribed.

### 4. Medical Care Claims

Finally, even if plaintiff's medical care claims were allowed to proceed against all of the defendants, including Secretary Stalder, Sheriff Buckley, Warden Sumlin, and all of the UPDC nurses, his claims would nevertheless be subject to dismissal.

"[I]nadequate medical care ... can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoner's] serious medical needs, constitut [ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir.1999) (quoting *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The "deliberate indifference" standard visits liability on prison officials for the denial of medical treatment only in those

9

circumstances where the official knew of and disregarded an excessive risk to inmate health or safety. *Stewart*, 174 F.3d at 534 (citing *Estelle*, 429 U.S. at 104). Malpractice and negligent treatment do not rise to the level of a constitutional tort. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993). Only allegations of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state claims actionable under §1983. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997) (citing *Estelle*, 429 U.S. at 105-106).

In *Estelle*, the Supreme Court concluded: "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104-05.

To state an Eighth Amendment claim in this context, a prisoner must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457, 1460 (5th Cir.1983), and that prison officials knew of and disregarded "an excessive risk to inmate health or safety." *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir.1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir.1998) (quoting

*Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir.1994) (citing *Farmer*, 511 U.S. at 842 & n. 8).

The facts alleged by the plaintiff are insufficient under this standard. He has not shown that the condition complained of posed a substantial risk to his future health. According to the complaint, plaintiff first began to experience distress on March 11, 2004. He did not complain for "a couple of days" and did not submit formal sick requests until March 14 and 17. He was examined by Nurse Moon on March 23 and was provided pain relievers and allergy medication.

His sick call requests of April 1 and April 4 resulted in a second examination on April 5. His requests for treatment on April 12 and 29 resulted in an examination on May 10. The jail staff transported him to the hospital on June 7, 2004, but, it was discovered that plaintiff's appointment was for another day. According to the plaintiff, he did not submit another sick call request until August 10, 2004. Further, according to plaintiff, he did not experience further swelling until late October 2004.

He was examined by a physician on December 9, 2004. His December 15, 2004, request for medical attention was honored on December 17 when he was again examined by a nurse at UPDC.

He was examined on January 11, 2005, following his January 10, 2005, sick call request. On that day he was provided pain relievers.

He suffered a fainting spell on March 14, 2005, and he was immediately examined by a jail nurse and transported to the Union Parish Hospital for further treatment.

His continued complaints resulted in an examination by a nurse on May 27, 2005, and

also late August 2005.

Such evidence of examinations and treatment negate plaintiff's claim of deliberate indifference. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir.1977).

Deliberate indifference is an extremely high standard to meet. An incorrect diagnosis by prison medical personnel does not state a claim for deliberate indifference. *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). Instead, the prisoner must show that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238. The decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And the "failure to alleviate a significant risk that [the official] <u>should have perceived</u>,[3] but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838, 114 S.Ct. 1970, 128 L.Ed.2d 811. Plaintiff simply has not alleged facts demonstrating that the defendants were aware of, and disregarded, a substantial risk of harm.

In short, having failed to establish deliberate indifference on the part of the defendants, plaintiff's medical care complaint must be dismissed.

Accordingly,

---

[3] Plaintiff's Amended Complaint seeks to visit liability on the defendants for their failure to know things they should have known. As to Secretary Stalder, plaintiff alleged that his inaction amounted to deliberate indifference when he "knew or should have known about the violation..." [doc. 8, p. 5] Likewise, with regard to Sheriff Buckley, he alleged, "...the Sheriff's corrective inaction amounts to deliberate indifference when the sheriff knew or should have known about all the violations..." [id.]

12

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted all in accordance with the provisions of 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) and (2).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 10th day of April, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE